OF

## THE STATE OF IOWA,

AT

## DES MOINES, MAY TERM, A. D. 1891,

IN THE FORTY-FIFTH YEAR OF THE STATE

---

HENRY KNAPP, Appellant, v. C. G. GREENWOOD *et al.*,
Appellees.

Mechanic's Lien: OSTENSIBLE OWNER: CONSTRUCTION OF STATUTE:
FORECLOSURE. One holding a power of attorney to buy and sell real-
estate for another, and until the sale thereof to rent the same, or to
occupy continuously himself, and to hold the same in all respects as if
he was the absolute owner thereof, is an *owner* within the meaning of
section 10, chapter 100, of the Laws of the Sixteenth General Assem-
bly; and where such a person purchased a town lot, and took a deed
in the name of his principal, but such deed was not recorded, and
material was sold to the agent for the construction of a house thereon,
under the representation that he was building the same to occupy
himself, and he did afterwards so occupy it, and was supposed by
the furnisher of the material to be the owner, *held*, that the party sup-
plying said materials was entitled to a mechanic's lien therefor, and
to have the same foreclosed against said property as against the actual
owner thereof.

*Appeal from Mills District Court.*—HON. GEORGE
CARSON, Judge.

TUESDAY, MAY 26, 1891.

ACTION to quiet title to certain real estate. There was a decree for the defendants, and the plaintiff appeals.—*Affirmed.*

*H. C. Watkins,* for appellant.

*E. B. Woodruff* and *L. W. Ross,* for appellees.

GRANGER, J.—The issues involve the title to lot 12, block 19, in the town of Silver City, Mills county, Iowa. On the twenty-eighth day of July, 1885, the defendant Terrell, then sheriff of Mills county, made to the defendant, James A. Frazier, a deed of said premises, which was the result of a sale in pursuance of a foreclosure judgment of a mechanic's lien in a suit in which the defendant, C. G. Greenwood, was plaintiff, and I. H. Bouton was defendant.

The mechanic's lien (foreclosed) was for lumber sold by Greenwood to Bouton and used in the erection of a house on the lot in question. The plaintiff Knapp was, and is, a resident of Cayuga county, New York. I. H. Bouton was his agent, holding a written power of attorney to buy and sell for him real estate in Iowa. In pursuance of such authority in May, 1881, Bouton purchased of one Wing lots 10, 11 and 12, the latter being the lot in question, and Wing made a deed thereof to Knapp, which he, Wing, was permitted to retain as security for an unpaid balance of the purchase money of twenty-five dollars, which was paid, and the deed surrendered in the winter of 1884–1885 to L. Bouton, son of I. H. Bouton. The latter placed the deed in the recorder's office, without payment of the fee for recording, and it remained without record until July, 1886, when I. H. Bouton paid the fee, and it was recorded.

After the purchase of the lots in May, 1881, I. H. Bouton bought of Greenwood the lumber used in con-

structing the house.  Greenwood then understood that Bouton owned the lots, and Bouton said he was building the house to occupy himself; he was moving in from the country, and was going to practice law. The building was erected, and I. H. Bouton moved into and occupied it until he left the state, and went to Cayuga county, New York.  This power of attorney (omitting unimportant parts) is as follows:

"*Know All Men by These Presents:* That I, Henry Knapp, unmarried, of Cayuga county, state of New York, have made, constituted and appointed and by these presents do make, constitute and appoint, Isaac H. Bouton, of Mills county, state of Iowa, my true and lawful attorney for me, and in my name, place and stead, to enter into and take possession of all such lands, tenements, hereditaments, or real estate whatsoever in Mills county, state of Iowa, to or which I am or may be in any way entitled or interested, and to grant, bargain and sell the same, or any part or parcel thereof for such sum or price, and on such terms as to him shall seem meet, and for me and my name to make, execute, acknowledge and deliver good and sufficient deeds and conveyances for the same, either with or without covenants of warranty; *and until the sale thereof to let and demise the said real estate for the best rent that can be procured for the same, or to occupy continuously himself and to hold the same in all respects as if he was the absolute owner of the same.* He shall also have power to purchase additional lands for me, and to execute mortgages in my name for me, and to collect, recover and receive all sums of money which shall become due and owing to me by means of such bargain or sale, or lease and demise.  Giving and granting to the said Isaac H. Bouton, my said attorney in fact, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully,

to all intents and purposes, as I might or could do, if personally present."

The erection of the building on the lot was at the time known to the plaintiff by notice from Bouton. The plaintiff seeks to avoid the foreclosure judgment, and the sale made in pursuance thereof, on the ground that he was not a party to the proceeding and that he is not bound by the acts and conduct of I. H. Bouton.

We think a few facts practically conceded lead to a correct disposition of this case. Having in view the facts, that by the power of attorney the plaintiff gave to Bouton the right in regard to the real estate "to rent the same, or to occupy continuously himself, and to hold the same in all respects as if he was the owner of the same;" and then giving and granting to "him   *   *   * full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present;" and, also, that the plaintiff knew that Bouton had erected the building, and was using the same, we are brought to the point to consider the particular facts urged against the validity of the judgment and sale. The plaintiff was not a party to the foreclosure proceeding. That proceeding was on the theory and supposition that Bouton was the owner of the lot. He had been residing in the country, was moving into town, and under the undisputed evidence constructed the building for his own immediate use, and there is no pretense in the record that such use was not authorized by the plaintiff. The plaintiff's deed had been kept from the record, and Bouton, being in possession, was the ostensible owner, and the material was furnished under a belief that he was the *actual* owner. It is beyond dispute that the building was made for the immediate use of Bouton, though perhaps ulti-

mately for the plaintiff. Under that state of facts Bouton was, for the purpose of a mechanic's lien thereon, the owner. By section 10, chapter 100, Laws of the Sixteenth General Assembly, it is provided: "Every person for whose immediate use or benefit any building, erection or other improvement is made * * * shall be included in the word 'owner' thereof." Code, section 2130, gives the lien by virtue of a contract with the "owner" of the land. It will thus be seen that "owner" is not of necessity one who has a legal or equitable title, but one for whose immediate use or benefit the improvement is made. Bouton comes clearly within this provision of the statute, and the case exemplifies the wisdom of the law, as without it Greenwood would have been denied his lien, for by the transaction between the plaintiff and Bouton the actual ownership was unknown. See *Estabrook v. Riley*, 81 Iowa, 479. The foreclosure judgment was small, and it is to be regretted that property of much greater value should be sacrificed in payment. But this does not seem to have been the fault of the defendants.

Both Knapp and Bouton, at the commencement of the foreclosure suit, were in New York, and the service was by publication, and it is said that Bouton had no actual knowledge of its pendency. That fact would not defeat the judgment. The judgment was by default, and the law fixes the time and terms of opening such a case for retrial. There is reason to believe there was not as much anxiety to investigate the merits of the foreclosure suit, as there is to avoid the judgment by this kind of a proceeding. The record shows that after the expiration of the period of redemption the defendant Frazier was willing to permit redemption, which was refused or neglected.

There are no controlling equities on behalf of the plaintiff. The judgment below is AFFIRMED.