## THE STATE v. WILLIAM G. BOWMAN, Appellant.

### Division Two, June 3, 1919.

1. **INSTRUCTION: Refusal of Defendant's.** If the court has already given a correct instruction fully covering the point of prosecutrix's age, it is not error to refuse one to the same effect asked by defendant.

2. **INSTRUCTION: Rape of Girl Under Age of Consent: Timely Complaint.** In the prosecution of a defendant charged with statutory rape upon a girl under fifteen years of age, it is not error to refuse to instruct that the jury may take into consideration, in determining the guilt or innocence of defendant, that she did not complain of the alleged complaint to others as soon as opportunity afforded, although she has testified that she was forcibly ravished; for the fact of timely complaint is allowed to be shown only in case of rape by force of a female capable of giving her consent.

3. **EXAMINATION OF DEFENDANT: Inquiry as to Moral Opinions.** To ask a defendant, charged with statutory rape upon a girl under fifteen years of age, whether he "thought it was right and proper to run these young girls into this saloon through a side door," and compel him to answer, not only calls for an opinion or conclusion, but is an improper inquiry into his opinions upon questions of human behavior and sobriety, and compels him by his answer to assume the risk of having his personal views upon these matters run counter to those held by the jury, and is therefore prejudicial.

4. **EVIDENCE: Prosecutrix's Age: Family Bible Entry.** The admission in evidence of a loose piece of paper, on which, among other data, had been written the date of prosecutrix's birth, by her grandmother, who is still alive, at the dictation of prosecutrix's mother, who testified as to the date of her birth, and which had been pinned to a leaf in the family Bible, was reversible error. Entries in a family Bible are, when considered as potential evidence, nothing but hearsay, and as such are on a parity, touching their admissibility in evidence, with mere verbal declarations of the entrant or declarant, and in order that such declarations may be admitted in evidence it must be shown: (1) either that the entrant is dead, or that his testimony is otherwise unobtainable upon the trial; (2) that the entrant was or is a relative of the family to which the individual whose age or date of birth is under inquiry belongs; and (3) that the entries were written *ante litem motam.*

5. **VERDICT:** Excessive Punishment.  As the judgment must be reversed and the cause remanded for a new trial because of error in the admission of evidence, the question of whether a verdict finding defendant guilty of statutory rape upon a girl under fifteen years of age and assessing his punishment at ninety-nine years' imprisonment is excessive, is reserved.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

REVERSED AND REMANDED.

*Patrick T. O'Hern, Clarence Wofford* and *Bert S. Kimbrell* for appellant.

(1) The court erred in admitting in evidence State's exhibit, consisting of a Bible printed in the English language, to a page of which was attached by an ordinary pin a plain sheet of writing paper upon which was written the names and ages of the children of prosecutrix's mother, including the prosecutrix, the evidence disclosing that at the time of the births of the various children, including the prosecutrix, the mother kept no family Bible in which was recorded the births of said children, that no record of any kind or character was kept, and that the entries upon said piece of paper were made from twelve to fourteen years after the birth of the prosecutrix.  Hamilton v. Wabash Railway Co., 21 Mo. App. 156;  State v. Neasby, 188 Mo. 470;  State v. Miller, 70 Kan. 200;  People v. Mayne, 118 Cal. 516;  Greenleaf on Evidence (16 Ed.), chap. 10, pp. 195 and 200;  9 Ency. Evid., pp. 738, 745;  Stein v. Bowman, 13 Pet. (U. S.) 209;  In re Colbert's Estate, 153 Pac. 1026;  In re Peterson's Estate, 134 N. W. 760;  2 Wigmore on Evidence, sec. 1481, p. 1841;  State v. Menard, 110 La. 1098;  Vantine v. Butler, 240 Mo. 531.  (2) The court erred in permitting the prosecutor to propound to the defendant and in requiring the defendant to answer over the exception of the defendant, the following questions, to-wit: "Q.  Was that proper for you to run these young girls into this saloon, through the side door there?

Q. You thought that was perfectly proper?'' (3) The evidence is insufficient to sustain the conviction. State v. Hughes, 258 Mo. 264; State v. Donnington, 246 Mo. 343; State v. Tevis, 234 Mo. 276; State v. Goodale, 210 Mo. 275; Champagne v. Hamey, 189 Mo. 709; State v. Patrick, 107 Mo. 147; Sherwood's Commentaries, pp. 94 to 101. (4) The punishment assessed by the jury is excessive. (5) Under the facts of the case at bar, the court erred in refusing the instruction asked by defendant, on timely complaint. State v. Davis, 190 S. W. 298; State v. Donnington, 246 Mo. 355; Champagne v. Hamey, 189 Mo. 709; Sherwood's Commentaries, pp. 94 to 101; State v. Witten, 100 Mo. 528; State v. Wilson, 91 Mo. 410. Manifestly the refusal of this instruction was erroneous if it should be determined by the court that the evidence discloses a case of rape by force.

*Frank W. McAllister,* Attorney-General, and *C. P. Le Mire,* Assistant Attorney-General, for the respondent.

(1) The admitting in evidence of a Bible to a page of which was attached a written memorandum of the date of the birth of prosecutrix, was not reversible error. State v. Gulley, 272 Mo. 489; State v. Neasby, 188 Mo. 470; Beckham v. Nacke, 56 Mo. 549. (2) The court permitted counsel for the State to ask the defendant the following questions: "Q. Was that proper for you to run these young girls into this saloon, through the side door there? Q. You thought that was perfectly proper?" These questions were so grossly immaterial as to warrant scant consideration here, especially as the witness never gave a direct answer to either. (3) The evidence introduced was sufficient to sustain the conviction. State v. Taylor, 267 Mo. 48; State v. McBrian, 265 Mo. 604; State v. Mace, 262 Mo. 157; State v. Hughes, 258 Mo. 272; State v. Bowen, 247 Mo. 595; State v. Stackhouse, 242 Mo. 450; State v. Swain, 239 Mo. 728; State v. Scott, 214 Mo. 261; State v. Espenschied, 212 Mo. 223; State v. Yandell,

201 Mo. 662. (4) The punishment assessed was not excessive. Sec. 4471, R. S. 1909, as amended by Laws 1913, pp. 218, 219, and Laws 1917, p. 246; State v. Moore, 121 Mo. 519; State v. Williams, 77 Mo. 312. (5) Appellant's instruction was properly refused, being fully covered by instructions given. State v. Hicks, 178 Mo. 444; State v. Palmberg, 199 Mo. 243; State v. George, 214 Mo. 267. (6) Since the elements of force or consent do not enter into the offense charged, appellant's instruction was properly refused. State v. Volz, 269 Mo. 202; State v. Palmberg, 199 Mo. 253.

FARIS, J.—Defendant was tried in the Criminal Court of Jackson County upon an information charging him with statutory rape committed upon a girl alleged to be under the age of fifteen years. The jury, having found him guilty, assessed his punishment at imprisonment in the State Penitentiary for a term of ninety-nine years. From the resulting sentence and judgment, he has in the usual way appealed.

This case was before us at a former term, whereat a sentence of imprisonment in the State Penitentiary for nine years was reversed and remanded for certain errors in the admission of testimony and in the cross-examination of the defendant. The facts of the case are abysmally sordid and indecent. These facts are sufficiently set forth in the report of the case upon the former appeal. See State v. Bowman, 272 Mo. 491, where these interested or curious may read them.

Such of the facts as we shall find it necessary to refer to on this review will be set forth by us in connection with our discussion of the law governing the several contentions made. The name of the prosecutrix is unimportant, and we shall therefore refer to her simply as "the prosecutrix."

Defendant urges manifold alleged errors upon our attention. Among these are: (a) Errors in the refusal of instructions asked by defendant; (b) errors in allowing the State to travel in its cross-examination of defendant, far afield from his examination-in-chief; (c)

insufficiency of the evidence to support the verdict; (d) errors in the admission of evidence on the part of the State, and (e) the excessiveness of the verdict and sentence.

I. Defendant requested, and the trial court refused, to give the below instruction, to-wit:

"The court instructs the jury that unless you find and believe from the evidence beyond a reasonable doubt that on May 27, 1915, the date of the alleged assault, the prosecutrix was under the age of fifteen years, you will find the defendant not guilty."

Age of Prosecutrix.

The refusal of the above instruction was not error, because the court had already, in instructions one and four, which were given of his own motion, fully covered the point of prosecutrix's age, and the necessity for the jury to find beyond a reasonable doubt that she was under fifteen years of age when the act complained of occurred. It results that the refusal to give an instruction upon the point covered by the refused instruction was not error, and this contention must be disallowed.

II. Another instruction which defendant requested and the court refused to give reads thus:

"The court instructs the jury that if you find and believe from the evidence that the prosecutrix did not as soon as an opportunity offered complain of the alleged offense to others, but concealed it for a considerable length of time thereafter, then the jury should take this circumstance into consideration with all other evidence in determining the guilt or innocence of the defendant, and whether, in fact, a rape was committed or not."

Timely Complaint.

The refusal of the above instruction, as we have a number of times ruled, was not error in this sort of case. [State v. Palmberg, 199 Mo. l. c. 253; State v. Hammontree, 177 S. W. 367.] We recognize keenly the difficulty and closeness of this point, and we appreciate

fully the defendant's point of view, and the great force . of his insistence. It presents a phase of the doctrine announced in the maxim *"Falsus in uno, falsus in omni-* *bus,"* for if prosecutrix's testimony is credible and is to be believed, she was forcibly ravished. If she was debauched by force and not by consent, human ex- perience—as chronicled in all of the books—is that she would have lost no time in making complaint of the fact. Her failure promptly to complain, her age and environment regarded, may well cast doubt upon her story of force, and if her story as to the use of force is false, her entire story, perforce the maxim supra, is appreciably weakened.

But, by the express terms of the statute under which this prosecution was had, force is not a necessary ele- ment of the crime for which defendant was convicted. An instruction of the sort requested is therefore a com- ment upon the prosecutrix's testimony upon a point not within the issuable facts. If prosecutrix had been in law capable of consenting, and had consented, there would be no crime; but she was not so capable. The fact of timely complaint is only allowed to be shown in a case of rape by force in corroboration of the fact of force; because, as forecast, such timely complaint, in the light of human experience, is ordinarily incompatible with consent.

So may be said to run some of the arguments for and against the giving, in any case of statutory rape, of the sort of instruction which the court here refused to give. We cannot, of course, state too strongly the distinction in this respect existing between the latter crime and rape by force. [See State v. Patrick, 107 Mo. 147.] Moreover, cases occur wherein prompt complaint would be excused by reason of prosecutrix's domination by fear, or by her environment. [State v. Baker, 136 Mo. 74.] Likewise, cases occur under this charge wherein the childish age of a victim would excuse the absence of prompt complaint, because of lack of sufficient intelli- gence to understand and appreciate the heinousness of

278 Mo.—32

the crime committed against her. Within the maze of exceptions, it will be seen, therefore, that great difficulty would be met in applying the proper rule to any given case of prosecution under the provisions of the first clause of Section 4471, Revised Statutes 1909, as amended by Laws 1913, p. 218. For, by reason of the excusing exceptions noted, the impossibility of fixing any settled rule for all cases becomes obvious. We conclude therefore, that we are not warranted, upon any sufficient or compelling reason in overruling the adjudged cases which obviously state a rule in diametrical conflict with the one defendant is here contending for; although confessedly the point is a close, difficult, and an interesting one. In passing, we scarcely need to observe that the point urged could never arise except in a case wherein the prosecutrix had testified to the use of force in accomplishing the crime charged, and then only upon the single point of her credibility as a witness. We adhere, therefore, to the doctrine of the adjudged cases, and disallow the contention—the less reluctantly for that ample leeway to discuss the inconsistency of prosecutrix's testimony and behavior is afforded by the general instruction given upon the credibility of the witnesses.

III. Complaint is also made that in the course of the cross-examination of defendant by the State, he was required to answer whether he "thought it was right and proper to run these young girls into this saloon through the side door." The only grounds of objection urged were that the question called for a conclusion, and was immaterial.

Cross-Examination of Defendant.

While the question required defendant to disclose his mental and moral attitude regarding the situation shown, and undoubtedly was, to this extent, asking for an opinion or conclusion, and was therefore improper, a yet stronger objection to it was that it was not covered by, or included within, the fair range of defendant's examination-in-chief. But this latter objection was not made. It could well have been made, and might also

have been made, but it was not, to some hundred or more other questions asked by the State in cross-examining the defendant. We are convinced that the question was improper and ought not to have been either asked or answered.

Defendant was being prosecuted for statutory rape, and not for holding immoral opinions upon questions of human behavior and sobriety, and he ought not to have been required to assume the risk of having his personal views upon these matters run counter to those held by the jury, and thus prejudice his case before the jury. Questions of politics and morals, religion and governmental policy arise and grow acute and become daily provocative not only of prejudice, but of breaches of the peace, when opinions touching them are expressed which are at variance with the views of those within hearing distance. We agree that the question asked was improper, and that this contention of defendant ought to be sustained.

IV. When the case was here before, the alleged insufficiency of the evidence to support the conviction was strenuously urged upon our attention. Defendant again urges this point, as against the facts before us upon the instant record. The case now made by the evidence is fully as strong, if not stronger, than was the case when it was here before. We then held that the evidence was sufficient to go to the jury (State v. Bowman, 272 Mo. 491), and while the story of prosecutrix is in some respects strongly contradicted by witnesses seemingly credible and apparently disinterested, and while in some aspects her behavior and testimony are opposed to human experience, we see no reason to change our views upon the sufficiency of the evidence to sustain the verdict. All of these matters and things and contradictions were for the jury. Even upon the matter of corroboration arising from her prompt complaint, or lack thereof, the evidence was contradictory, and therefore upon this

*Sufficiency of Evidence.*

point also the question was one for the jury. It follows that this contention must be overruled.

V. Upon the trial now under review, as was the case upon the former trial (State v. Bowman, 272 Mo. l. c. 498), there was a sharp conflict in the evidence upon the age of prosecutrix. Her age was a vital point in the case. The sharply contested issue was whether she was at the time 14 years, 6 months and 18 days old, or exactly one year older than this. If she was fifteen years old, defendant could not under the law have been convicted upon the charge before us.

Prosecutrix's Age: Bible Entry.

Upon the trial the State was permitted to offer a sheet of paper containing written thereon the names and dates of birth of prosecutrix and her brothers and sisters, which sheet of paper was pinned to a leaf of a Bible. This paper had been written by the grandmother of prosecutrix *ante litem motam,* but long after the facts stated therein had transpired. The grandmother, who was still living at the time of the trial, had written down the data mentioned from the dictation of prosecutrix's mother. The mother testified in the case. But, notwithstanding this fact, the State was permitted to offer in evidence, over defendant's objection, the paper mentioned. Defendant now complains that this sheet of paper was not admissible, and that the trial court, in permitting it to be offered, committed reversible error.

We think this contention is well taken, and must be sustained. While the authorities, both in this State and out of it, disclose much loose writing upon the point, it is one which is easily traced back to its legal foundations, and which—when so traced and examined—presents but little difficulty. Some jurisdictions refuse to admit hearsay declarations of this sort, in any case except a pedigree case. [Cf. People v. Mayne, 118 Calif. 516; 1 Greenleaf on Ev. (16 Ed.) p. 203, note.] But such a rule has never secured a foothold in this State

(State v. Marshall, 137 Mo. 463), and no sufficient reason for so restricting the admissibility of such evidence within such narrow limits can be seen. [22 R. C. L. 1201; 1 Greenleaf on Ev. (16 Ed.) 203.]

The admissibility of such entries at all and in any case constitutes an exception to the rule against hearsay evidence. It is a well-settled exception, because all courts recognize it—some, however, as forecast, in a limited and not a thorough-going way. Mr. Greenleaf, in his excellent work on Evidence, states the rule thus:

"As a preliminary to the admission of declarations by a member of a family, or of reputation in the family, a necessity for resorting to such evidence must first appear. As to declarations by an individual member, his death is a sufficient ground; though there is some authority for the notion that if other members of the family are living and available, the deceased's statement is inadmissible; but this seems unsound. It is usually intimated that death is the only ground for admission; and of course where the declarant is alive and available, the declarations are inadmissible. As to family reputation, it is perhaps not necessary to show that every member of the immediate family is deceased; but it is usual to exclude such reputation where the matters are of recent occurrence and some of the family appear to be available,—at any rate where the reputation is in the form of a family Bible-entry and the entrant himself is still available. . . .

"The rule of admission is, therefore, restricted to the declarations of deceased persons who were related by blood or marriage to the person. . . .

"Thus, an entry by a deceased parent or other relative made in a Bible, family missal, or any other book, or in any document or paper, stating the fact and date of birth, marriage or death of a child, or other relative, is regarded as a declaration of such parent or relative as a matter of pedigree." [1 Greenleaf on Ev. (16 Ed.) pp. 197-200.]

It is fundamental that such entries in a family Bible, are, when considered as potential evidence, nothing but hearsay, and as such on a parity touching their admissibility with mere verbal declarations of the entrant or declarant. The rule as to when, or under what conditions precedent, such declarations are admissible is fairly simple. It must be shown, (a) either that the declarant or entrant is dead, or that his testimony is otherwise unobtainable upon the trial; (b) that the declarant or entrant was, or is, a relative of the family to which the individual, whose age, or date of birth is under inquiry, belongs, and (c) that the declarations were made, or the entries written, *ante litem motam*. [Stein v. Bowman, 13 Pet. 209; In re Colbert's Estate, 153 Pac. l. c. 1026; 9 Ency. of Ev. 739; In re Peterson's Estate, 134 N. W. l. c. 760; People v. Mayne, 118 Cal. 516.] In the instant case, the undisputed facts were that the names and dates of birth of prosecutrix and her brothers and sisters, of whom there were five, were written on a loose sheet of paper by the grandmother of prosecutrix, *at the dictation of, and wholly from data furnished by prosecutrix's mother*. The mother was present and testified in the case, on the part of the State, as to the precise date of prosecutrix's birth. The grandmother who performed the mere manual labor of writing down on this sheet of paper the information given to her by the mother, was still alive at the time of the trial—but we need not consider the grandmother, for the testimony shows that she wrote only what the mother dictated and told her to write. This writing of the date of prosecutrix's birth upon the sheet of paper in question seems to have been done when the latter was eleven or twelve years of age, and following a sharp difference of opinion between the grandmother and the mother in regard to the age of prosecutrix. After being written, this loose sheet of paper was attached to a leaf of a Bible by a pin, and was so preserved till it was offered on the trial of this case.

That this sheet of paper was inadmissible is instantly obvious when the above undisputed facts are examined, in the light of the rule which we announce above. It was a mere written declaration of a living witness to a fact about which the witness had herself already testified, and it was therefore pure hearsay without the pale of the exception noted. The testimony of the mother was of course admissible, and fell naturally into the category of the best evidence obtainable. The harmfulness of the admission of this writing is apparent when we consider that the mother could, so far as the facts before us are concerned, have qualified one hundred or more witnesses as to the age of prosecutrix had she *ante litem motam*, fortuitously walked down the street and told each of such witnesses the date of prosecutrix's birth. Any such witness would thus have become as competent to relate the date of prosecutrix's birth as was the paper offered to recite this fact.

The cases of State v. Gully, 272 Mo. l. c. 489, and State v. Bruton, 253 Mo. 361, are readily distinguishable upon their respective facts from the facts in the instant case. In neither of these latter cases, among other things which distinguish them from this, was there any conflict in the testimony touching the age of the prosecuting witness therein. In the Bruton case the sheet of paper, on which entries made by the deceased mother were copied from a family Bible, was held by us to be admissible. The copy of the Bible entries was made because the original record therein had, from age and use, become illegible. But this copy from such Bible entries was made at the direction and in the presence of the mother, who, twelve years before the paper was admitted in evidence had departed this life. Upon proof of the identity of the sheet of paper, of its correctness as a copy of the original, illegible entry, of the prior death of the mother, and of the making of such copy by the latter's direction and in her presence, the copy was ruled by us to be admissible.

In the Gully case, supra, the point was not decided at all, but especially reserved by us. In both the Bruton case and the Gully case the question rode off upon another point. It follows that the contention of error bottomed upon the admission of the paper in question ought to be sustained.

VI. Coming to the last point urged, that of alleged excessiveness of the verdict, it is enough to say that since his case must for other errors be reversed and re-

**Excessive Verdict.** manded for a new trial, whereat the verdict will not necessarily be subject to the same criticism, we need not now take up time and space here to decide it. We may content ourselves with saying that the point raised has at least the virtue of uniqueness. For the question, whether a punishment which a jury has assessed within limits set by the Legislature (when the point is *wholly disassociated from other potential errors*) can possibly be excessive, is reserved till a more convenient season, and till we shall meet it in a case face to face.

For the errors noted let the case be reversed and remanded for a new trial, in accordance with what we have held herein. And it is so ordered. All concur.